# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN L. BASCOMB,

    *Plaintiff,*

*v.*                    CASE NO. 11-CV-11418

COMMISSIONER OF         DISTRICT JUDGE JOHN CORBETT O'MEARA
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant.*

_____/

## OPINION AND ORDER[1]

## I.    INTRODUCTION

This is an action for judicial review of Defendant's decision denying Plaintiff's application for social security disability benefits. The case is before this magistrate judge for opinion and order pursuant to the parties' consent under 28 U.S.C. § 636(c) and the district judge's order of reference. (Doc. 20.) I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the parties' cross-motions for summary judgment (Docs. 13, 17) are ready for decision without oral argument.

## II.    ANALYSIS

### A.    Background

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Doc. 12, Transcript at 61, 262, 278.) Plaintiff's employment history includes work as a cook, laborer, and

---

[1]The format and style of this Opinion and Order are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Admin. Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Opinion and Order only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

machine operator. (Tr. at 69, 78.) Plaintiff filed the instant claims on November 29, 2005, alleging that he became unable to work on November 1, 2004. (Tr. at 61, 262.) The claims were denied at the initial administrative stages. (Tr. at 53, 267.) In denying Plaintiff's claims, the Commissioner considered cerebrovascular disease, late effect, and essential hypertension as possible bases for disability. (*Id.*) On January 27, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the application for benefits *de novo*. (Tr. at 21-31.) In a decision dated April 14, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 31.) Plaintiff requested a review of this decision on April 16, 2009. (Tr. at 18-19.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 17, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) On April 4, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.   Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely

3

because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.   Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*,

4

74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2008, and that Plaintiff had not engaged in substantial gainful activity since November 1, 2004, the alleged onset date. (Tr. at 26.) At step two, the ALJ found that Plaintiff's status post cerebral vascular accident, hypertension, ischemic heart disease and mild tenderness of the right shoulder were "severe" within the meaning of the second sequential step. (Tr. at 26-27.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 27-28.) At step four, the ALJ found that Plaintiff could not perform any past

relevant work as a cook, machine operator, maintenance worker, crew leader caterer, or fast food worker. (Tr. at 30.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 28-30.) The ALJ also found that Plaintiff was a younger individual (age 18-49) on the alleged onset date. (Tr. at 30.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24-31.)

### E.   Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for hypertension since 2004. (Tr. at 177.) On December 17, 2004, Plaintiff sought treatment in the emergency room of Sinai-Grace Hospital in Detroit, Michigan, for muscle spasms he experienced after "he smoked some weed." (Tr. at 174.)

On May 11, 2005, Plaintiff was treated at the emergency room of Sinai-Grace Hospital for acute dehydration and acute lightheadedness. (Tr. at 141.) Plaintiff was given IV fluids and sent home. (Tr. at 144.)

On August 16, 2005, Plaintiff was treated at the Sinai-Grace Hospital for a headache, dizziness, numbness on the right side of his face, and chest pain. (Tr. at 146.) It was noted that Plaintiff had not taken his medication for hypertension for "a few days prior to this event." (Tr. at 146.) A CT scan of the head showed a "lacunar left cerebral stroke." (Tr. at 147.) Plaintiff was diagnosed with "[l]eft cerebral lacunar infarct secondary to hypertensive cardiovascular disease." (Tr. at 147.) Plaintiff "was informed about the importance of compliance and control of blood pressure, hyperlipidemia, and quitting smoking." (*Id.*) Since Plaintiff was experiencing slurred speech, color duplex imaging of Plaintiff's extracranial and vertebral arteries was performed and the test results were normal. (Tr. at 217-19.)

7

A CT scan of Plaintiff's head taken on August 19, 2005, confirmed "[s]ubacute on chronic infarct in the left basal ganglia." (Tr. at 157, 221.) Upon discharge, Plaintiff was given the following limitations: no lifting, alternate activity periods with rest periods, stop any activity at the first sign of chest pain, and no bending/twisting at waist. (Tr. at 159.) Plaintiff also sought treatment with Anne Marie Polack, M.D. from January through September 2005. (Tr. at 162-73.)

On March 16, 2006, Plaintiff was examined by Disability Determination Services ("DDS") physician Cynthia Shelby-Lane, M.D. (Tr. at 177-81.) Dr. Shelby-Lane noted that "[a]t the present time, other than slurring of speech, [Plaintiff] does not have any other specific symptomatology." (Tr. at 177.) Plaintiff also reported a history of depression. (Tr. at 178.) The DDS physician diagnosed hypertension, history of depression and stroke. (Tr. at 180.)

On the same day, Plaintiff was also examined by DDS physician M. Bhavsar, M.D., who diagnosed Plaintiff with alcohol and marijuana abuse and mood disorder with psychotic feature due to substance abuse. (Tr. at 189.) Plaintiff's GAF score was determined to be 45. (*Id.*)

A Physical Residual Functional Capacity ("RFC") Assessment completed on April 24, 2006, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour work-day and was unlimited in his ability to push or pull. (Tr. at 134.) There were no postural, manipulative, visual, communicative, or environmental limitations established. (Tr. at 135-37.)

A Psychiatric Review Technique completed on May 12, 2006, found that any psychiatric impairments, i.e., affective disorders or substance addition disorders, were "not severe." (Tr. at 119.) The assessment also concluded that Plaintiff had the medically determinable impairment of "mood disorder with psychotic features due to substance abuse." (Tr. at 122.) Plaintiff was found to be mildly restricted in his ability to perform activities of daily living, maintaining social

8

functioning and maintaining concentration, persistence or pace, and it was noted that he had not experienced any episodes of decompensation. (Tr. at 129.) The consultant also noted that "[t]here is no history of psychiatric hospitalization and currently [he] is not being treated by a psychiatrist." (Tr. at 131.)

Although Plaintiff was referred for rehabilitative therapy on July 20, 2006, he was discharged for poor attendance on August 7, 2006. (Tr. at 255.)

Plaintiff was referred to Kalil Masri, D.O., on October 5, 2006, for a consultation. (Tr. at 202-03.) Dr. Masri diagnosed status post myocardial infarction, recent hypertensive crisis, and hypertension. (Tr. at 223.)

An echocardiogram taken on October 27, 2006, was normal. (Tr. at 206.) Another echocradiogram taken on May 17, 2007, showed all heart functions normal except for mild mitral regurgitation and trace tricuspid regurgitation. (Tr. at 204.) An exercise stress test also performed on October 27, 2006, was normal with "[n]o electrocardiographic changes with dipyridamole." (Tr. at 248.) Myocardial spect perfusion imaging taken that same day showed "normal wall motion" and "[n]o evidence of reversible ischemia." (Tr. at 250.)

On July 16, 2008, a CT scan of the head was taken which revealed "no acute intracranial process" and "chronic sinus disease." (Tr. at 232, 236.) On July 18, 2008, a cerebrovascular evaluation was performed by Dr. Ann Marie Poleck based on Plaintiff's history of memory loss. Dr. Poleck concluded that the study was normal except that "minimal plaques were noted in the left cartoid bifurcation less than 20% reduction of internal." (Tr. at 234-35.)

On November 18, 2008, Dr. Masri examined Plaintiff again. (Tr. at 191.) Although Dr. Masri found Plaintiff's complaints credible, in response to the question regarding whether the medical signs showed the existence of a medical impairment or impairments which could

reasonably be expected to produce the pain or symptoms alleged, Dr. Masri stated, "refer to family doctor." (Tr. at 192.) Dr. Masri also concluded that Plaintiff could not perform work at any exertional level, that Plaintiff had had the impairment for over 12 months, and that the impairment was reasonably expected to last "approximately another 12 months or more." (Tr. at 193-94.) Dr. Masri identified depression, somatoform disorder and anxiety as psychological conditions affecting Plaintiff's condition and commented that Plaintiff should be referred for a more detailed psychiatric examination. (Tr. at  194.)

Dr. Masri opined that Plaintiff was only able to sit for one hour in an eight-hour workday and stand or walk for one hour in an eight-hour workday due to fatigue and pain. (Tr. at 195.) Dr. Masri also concluded that Plaintiff could occasionally lift up to ten pounds and could never lift any more than that. (*Id.*) Dr. Masri found that Plaintiff could not use leg controls and could only use his left hand on a regular and sustained basis. (Tr. at 196.) Dr. Masri also found that Plaintiff would require one ten-minute rest period per hour, would need to elevate his lower extremities with prolonged sitting (but Dr. Masri did not indicate how long Plaintiff should do so or what percentage of the time he would need to do so if he performed sedentary work), and that Plaintiff would need to lie down or rest for substantial periods of time during the day to relieve pain and fatigue arising from a documented medical impairment. (Tr. at 196-97.) Dr. Masri commented that Plaintiff "needs further evaluation by psychiatric and physical medicine." (Tr. at 197.)

Plaintiff indicated in his Daily Activity Report that he wakes his seven children and helps them get ready for school, takes them to school, eats, does some cleaning, picks the children up from school, returns home to cook dinner, and rests until he gets the children ready for bed. (Tr. at 97-98.) In addition, he cares for 2 dogs. (Tr. at 98.) Plaintiff indicated that he "sometimes" has difficulty tending to his own personal care because he "can't lift arm up." (Tr. at 98.) Plaintiff also

indicated that he needs reminders to take his medications. (Tr. at 99.) Plaintiff is able to clean, wash dishes, vacuum, rake, and is able to do so for "2-6 hours, as needed." (Tr. at 99.) Plaintiff also stated that he gets outside three times a day, is able to walk, drive a car, use public transportation, ride a bicycle, shop in stores for groceries and clothes twice a month for eight hours at a time, and is able to manage his finances. (Tr. at 100.) Plaintiff reported that his hobbies are Playstation games, television, exercising, listening to music and watching videos, and that he does these things for an hour at a time. (Tr. at 101.) Plaintiff also indicated that he likes to talk with others around twice a day and attends church, but that he "can't lift over 30 pounds; can't bend for a long time," is limited to short-term memory, talks with a slur, can only concentrate for a "short amount of time," can walk for less than one-half mile before he needs a 10-20 minute rest and can only pay attention for "less than an hour." (Tr. at 101-02.) Although Plaintiff indicated that he can only follow spoken instructions "to a point" because he "can forget," he also stated that he follows written instructions "good." (Tr. at 102.)

At the administrative hearing, Plaintiff testified that he stopped working after his heart attack in August 2005. (Tr. at 286.) Plaintiff stopped driving in January 2008 because his driver's license got suspended for unpaid seatbelt tickets. (Tr. at 287.) When asked how often he was driving before his license was suspended, Plaintiff responded:

> Daily, back and forth to work. I mean, - - just - - I wasn't driving that much, because - - I was just - - not often. Just because of my kids purposes or if I had to go to the doctor's office.

(Tr. at 287.) Plaintiff testified that he "mainly just lay in bed or try to relax and watch t.v." (Tr. at 288.) Plaintiff testified that he also goes to church and gets together with friends and relatives once or twice a month. (Tr. at 290.) When asked whether he is able to shower, Plaintiff stated that sometimes he "have to have my daughter come and help me wash my back or down my legs or

something" and when asked which daughter does this, he responded that his seventeen-year-old daughter does. (Tr. at 288.) Plaintiff stated that his daughter also helps him dress sometimes. (Tr. at 288-89.) Plaintiff has seven daughters and two sons, but all four of the children currently living with him are daughters. (Tr. at 289.)

Plaintiff stated that he stopped drinking "[a]bout a month" ago but "can't remember" the last time he smoked marijuana "because I don't do it like that. I don't smoke [inaudible]." (Tr. at 292.) When asked why he feels he is unable to work, Plaintiff responded that he is "in constant pain" and is "not able to do things." (Tr. at 293.) Plaintiff stated that he gets chest pains "[a]lmost daily" and that they last "[a]pproximately 45 minutes to an hour and a half. And that's after I take my medicine." (Tr. at 294-95.) Plaintiff explained that his medicine "relieves" his chest pain "[b]ut maybe not - - sometimes I can still feel just a little but it's not a point where it first starts, where it's unbearable." (Tr. at 295.) Plaintiff also stated that he has anxiety attacks "[d]aily at night" that last for "four or five hours." (Tr. at 295-96.) Plaintiff also indicated that his right side is generally weaker than the left but that he has trouble using both hands. (Tr. at 296-97.) Plaintiff also stated that he naps "[a] majority" of the day. (Tr. at 298.) Plaintiff stated that he was having an anxiety attack while testifying and that he has never seen nor been referred to a psychiatrist. (Tr. at 299.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background "with the residual functional capacity to perform the full range of light exertional work with the following additional restrictions. Standing or, standing and or walking up to six out of eight hours total and able to sit up to six out of eight hours total." (Tr. at 305.) When asked whether such a person could perform any past relevant work, the VE indicated that such a person could do some but not the whole range of work. (Tr. at 306-07.) The VE further testified that such a person could perform the 20,000 unskilled manufacturing jobs, such as

12

inspection, packaging, sorting and assembly jobs existing in the southeast area of Michigan. The VE further testified that an "added restriction of frequent bending and squatting or crouching" would not change his answer. (Tr. at 308-09.) The VE further testified that none of these jobs would be in a high stress environment. (Tr. at 309-10.) The ALJ asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the characteristics of occupations defined in the DOT and the VE responded affirmatively. (Tr. at 311.)

### F.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 28-30.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking and standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### G.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833;

*Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ failed to accord proper deferential weight to Plaintiff's treating physicians, Drs. Masri and Poleck, and instead relied on the opinions of consulting and examining doctors. (Doc. 13 at 17-19.) In addition, Plaintiff contends that the ALJ failed to make a proper credibility determination. (*Id.* at 19-21.) Finally, Plaintiff contends that the ALJ's RFC finding is inconsistent with the DOT because he failed to require the VE to provide DOT numbers for each of the jobs and failed to cite the number of jobs available per each job listed rather than combining the 20,000 jobs available in Southeastern Michigan. (*Id.* at 21-23.)

### 1.     Treating Source Opinion

As noted above, Plaintiff's treating physicians that he claims the ALJ improperly discounted were Drs. Masri and Poleck. (Doc. 13 at 17-19.) The treating physician rule applies when the treating source opinion is a *medical* opinion; however, "[w]hen a treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work'– the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492-93 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d), 1527(e), 416.927(e); Soc. Sec. Ruling 96-5p; and *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

I note at the outset that Dr. Poleck's opinions are not inconsistent with the ALJ's findings. I further note that Dr. Masri's conclusion that Plaintiff is unable to work is not entitled to controlling weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008); 20 C.F.R. § 404.1527(e)(1). The

14

regulations also provide that there are other opinions on issues reserved to the Commissioner that the Commissioner "will not give any special significance to," including a plaintiff's "residual functional capacity." 20 C.F.R. § 404.1527(e)(2) and (3). In the instant case, a significant portion of Dr. Masri's assessment form is an RFC assessment, and therefore is not a medical opinion entitled to any special significance pursuant to this regulation. The remainder of the form was properly weighed by the ALJ, included the required findings, and was supported by substantial evidence.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give

15

controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This

16

requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Dr. Masri's conclusions regarding Plaintiff's anxiety and other psychological issues were beyond the scope of his expertise as a cardiologist and thus are not entitled to controlling weight. *See Wilson*, 378 F.3d at 544. Furthermore, Dr. Masri's opinion that Plaintiff's complaints were credible was internally undermined by his response to the question seeking medical signs to support the conclusion, wherein he provided no medical analysis and simply stated, "refer to family doctor." (Tr. at 192.) This conclusion is not a well-supported medical opinion. Likewise, Dr. Masri's conclusion that Plaintiff would require one ten-minute rest period per hour and would need to elevate his lower extremities with prolonged sitting is unsupported and incomplete, i.e., Dr. Masri did not indicate how long Plaintiff should do so or what percentage of the time he would need to do so. (Tr. at 196-97.) Again, instead of providing support for these conclusions, Dr. Masri commented that Plaintiff "needs further evaluation by psychiatric and physical medicine." (Tr. at 197.) Accordingly, I find that Dr. Masri's opinions are not only internally inconsistent and unsupported by medical tests, findings or other evidence, but they are also inconsistent with the record as a whole.

As to Plaintiff's claims of disabling anxiety, Plaintiff has never been referred to or treated by a psychiatrist, nor has he ever been hospitalized. Such modest treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007). Although Plaintiff has hypertension and has suffered myocardial infarction, the record fails

to support a conclusion that these conditions have caused disabling symptoms. One of Plaintiff's emergency room visits was prompted by Plaintiff's having "smoked some weed." (Tr. at 174.) In addition, when Plaintiff suffered his stroke, he had failed to take his medication for hypertension for "a few days" and was chided by medical personnel regarding the importance of taking care of himself. (Tr. at 146-47.) Plaintiff also failed to attend rehabilitative therapy and was discharged for poor attendance. (Tr. at 255.)

Plaintiff has experienced slurred speech, but this is not a disabling symptom or condition and Plaintiff did not exhibit any "other specific symptomatology." (Tr. at 177.) Echocardiograms taken on October 27, 2006, and May 17, 2007, were normal except for mild mitral regurgitation and trace tricuspid regurgitation. (Tr. at 204, 206.) An exercise stress test also performed on October 27, 2006, was normal with "[n]o electrocardiographic changes with dipyridamole." (Tr. at 248.) Myocardial spect perfusion imaging taken that same day showed "normal wall motion" and "[n]o evidence of reversible ischemia." (Tr. at 250.) On July 16, 2008, a CT scan of the head revealed "no acute intracranial process" (Tr. at 232, 236) and a cerebrovascular evaluation performed in July 2008 was normal except that "minimal plaques were noted in the left cartoid bifurcation less than 20% reduction of internal." (Tr. at 234-35.) I therefore conclude that substantial evidence supports the ALJ's decision not to give Dr. Masri's conclusions controlling weight.

### 2.     Credibility Determination

Plaintiff contends that the ALJ failed to make a proper credibility determination. (Doc. 13 at 19-21.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest

18

of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to

19

exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence," S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I find that substantial evidence supports the ALJ's credibility finding. The ALJ considered the appropriate factors and found that Plaintiff's complaints of disabling pain were not fully credible. (Tr. at 28-30.) For the same reasons stated regarding the treating source findings, Plaintiff's modest treatment, lack of aggravating factors that

20

would make work more difficult than staying at home, and medical records do not support complaints of disabling pain. In addition, Plaintiff's description of his daily activities supports this finding. Plaintiff stated that he wakes his seven children and helps them get ready for school, takes them to school, eats, does some cleaning, cooks dinner, washes dishes, vacuums, rakes and is able to do so for "2-6 hours, as needed." (Tr. at 97-99.) Plaintiff also stated that he gets outside three times a day, is able to walk, drive a car, use public transportation, ride a bicycle, shop in stores for groceries and clothes twice a month for eight hours at a time, is able to manage his finances, plays games, watches television, exercises, listens to music, watches videos, visits with friends and family, and attends church. (Tr. at 100-02.)

### 3. Dictionary of Occupational Titles

Finally, Plaintiff contends that the ALJ's RFC finding is inconsistent with the DOT because he failed to require the VE to provide DOT numbers for each of the jobs and failed to cite the number of jobs available per each job listed rather than combining the 20,000 jobs available in Southeastern Michigan. (Doc. 13 at 21-23.)

In this Circuit, Social Security Ruling 00-4p is satisfied by the ALJ simply asking the VE if her testimony is consistent with the DOT. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006). In the instant case, the ALJ asked the VE whether his testimony was consistent with the DOT, the VE responded that it was, and Plaintiff's attorney did not object to the VE's testimony regarding the aggregate number of jobs available nor did he seek DOT numerical classifications. (Tr. at 311.) Therefore, I suggest that the ALJ was not under any obligation to inquire further into the accuracy of the VE's testimony, especially in light of the fact that Plaintiff's counsel failed to assert at the hearing that any conflict existed. *See Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security

regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge").

I therefore conclude that the ALJ did not commit any error regarding available jobs and I further find that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements as indicated above.

## III.   CONCLUSION

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   ORDER

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**, that Defendant's Motion for Summary Judgment is **GRANTED**, and that the findings of the Commissioner are **AFFIRMED**.

s/ Charles E. Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: March 2, 2012

## **CERTIFICATION**

I hereby certify that this Memorandum Opinion was electronically filed this date, and electronically served on Randall Phillips, Stuart Johnson, Frederick Daley, Jr., and Andrew Lievense.

Date: March 2, 2012                    By____s/*Jean L. Broucek*_____
                                        Case Manager to Magistrate Judge Binder